UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
LUZAR TRADING, S.A.,

                              Petitioner,
         v.

TRADIVERSE CORPORATION,

                              Respondent.
--------------------------------------------------------X

--------------------------------------------------------X
TRADIVERSE CORPORATION,

                              Petitioner,
         v.

LUZAR TRADING, S.A.,

                              Respondent.
--------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 25, 2021
```

20-CV-623 (KMW)

**OPINION AND ORDER**

20-CV-3387 (KMW)

**OPINION AND ORDER**

KIMBA M. WOOD, United States District Judge:

Petitioner Luzar Trading, S.A., a commodity merchant, petitioned to confirm (1) a December 2019 arbitration award (civil action 20-CV-623) and (2) a March 2020 arbitration award (civil action 20-CV-3387) (collectively, the "Awards") issued by two arbitration panels pursuant to the International Arbitration Rules of the International Centre for Dispute Resolution ("ICDR"). Respondent Tradiverse Corporation, a grain provider, petitioned to vacate the Awards under 9 U.S.C. § 10 on the grounds that they were procured by fraud, partiality, and misconduct, issued without authority, and in disregard of the applicable law.

For the reasons set forth below, the Court GRANTS Luzar's petitions to confirm each arbitration award and DENIES Tradiverse's corresponding petitions to vacate them.

1

# BACKGROUND

## I.   The March 2020 Arbitration Award (ICDR Case No. 01-18-0003-0504)

Tradiverse is a grain provider based in New York.  (Luzar Dec. 2019 Award Pet. at 1, No. 20 CV-623, ECF No. 6.)  Luzar is a commodity merchant based in Panama.  (Luzar Dec. 2019 Award Pet. at 1.)

Luzar entered into three contracts to purchase a total of 30,000 metric tons ("mt") of soybean meal and 3,800 mt of yellow soybean from Tradiverse: Broker's Contract Nos. 120993 (March 9, 2018), 121384 (April 17, 2018), and 121633 (June 5, 2018) (collectively the "Contracts").  (Luzar Mar. 2020 Award Opp'n at 3, No. 20-CV-3387, ECF No. 23; *see* Dehart Mar. 2020 Award Decl. at Ex. L1, No. 20-CV-3387, ECF No. 24; *see also* Tradiverse Mar. 2020 Award Pet. at 7-8, No. 20-CV-3387, ECF No. 1.)  Each of the Contracts was subject to the North American Export Grain Association's ("NAEGA" [1]) No. 2 standard form.  (Luzar Mar. 2020 Award Opp'n at 3; Tradiverse Mar. 2020 Award Pet. at 8.)

Pursuant to the Contracts, Luzar nominated the vessel SREDNA GORA (the "Vessel"), which berthed at the IFG Export Grain Terminal (the "Terminal") on June 21, 2018.  (Mar. 2020 Award at 7, No. 20-CV-3387, ECF No. 4 Ex. 1.)  Loading commenced on June 25.  (Mar. 2020 Award at 7.)

### 1.   *The Terminal Explosion and Tradiverse's Clause 20 Application*

On June 28, 2018, there was a fire and explosion at the IFG facility, and the Vessel's loading ceased.  (Mar. 2020 Award at 7.)  The City of Lake Charles Fire Department was called

---

[1] According to its website, NAEGA is a "not-for-profit trade association promoting policies, rules and commercial practices that support efficient international trade in grains, oilseeds and their derived products."  Who We Are, NAEGA, https://naega.org/who-we-are (last visited Feb. 8, 2021).

to extinguish the fire, and the Fire Chief ordered the power company to shut off all of the power. (Mar. 2020 Award at 7.)

On that same day, Tradiverse contacted Luzar through their broker Pasternak, Baum & Co., Inc. and declared "Force Majeure": "Due to an emergency at the terminal, loading operations have been halted. Force Majeure has been declared."  (Mar. 2020 Award at 7.)  Hours later, Luzar acknowledged receipt of the message but refused to accept Tradiverse's declaration. (Mar. 2020 Award at 7-8.)  Weeks later, on July 23, 2018, the Vessel was re-berthed, and loading resumed on July 24. (Mar. 2020 Award at 8.)  Loading was completed on approximately August 23.  (Mar. 2020 Award at 8, Attach. 1.)

 Although NAEGA No. 2 does not contain a "Force Majeure" clause, it contains an analogous provision in Clause 20.  Clause 20 provides that the "obligation of seller to make delivery shall be suspended" (i.e., performance impossibility) if the seller's commodity delivery is delayed by "[r]iots, strikes, lockouts, interruptions in or stoppages of the normal course of labor" or "[a]ction by Federal, State or local government or authority."  (Mar. 2020 Award at 17; Dehart Mar. 2020 Award Decl. at Ex. L2, Cl. 20.)  To rely on Clause 20, however, sellers must apply for and obtain a Clause 20 Certificate[2] from a NAEGA-appointed panel.  (Luzar Mar. 2020 Award Opp'n at 4; Tradiverse Mar. 2020 Award Pet. at 9.)

Tradiverse submitted a Clause 20 application to NAEGA on August 31, 2018, arguing that the explosion and the government's decision to shut down power to the Terminal caused the loading delay.  (*See* Mar. 2020 Award at 9; Luzar Mar. 2020 Award Opp'n at 4-5.)  NAEGA formed a Clause 20 panel, which included Michael Kaye, Jessica Stephan, and Heidi Hains

---

[2] To obtain a Clause 20 Certificate, NAEGA requires sellers to submit, among other things, an explanation of the cause and how the cause impacted contract performance, proof that a valid notice was sent, and the relevant supporting documentation.  NAEGA Clause 20 Process, NAEGA (last updated May 26, 2017), http://naega.org/wp-content/uploads/2012/05/NAEGA-Clause-20-Policies-and-Guidance-FINAL-Approved-by-BOD-5-26-2017-.pdf.

3

(collectively, the "Clause 20 Panel"), to consider Tradiverse's Clause 20 application.  (Mar. 2020 Award at 9; Luzar Mar. 2020 Award Opp'n at 4.)  Luzar opposed the Clause 20 application and communicated its views to NAEGA before and while the Clause 20 Panel considered Tradiverse's application.  (Mar. 2020 Award at 17.)  On January 31, 2019, NAEGA denied Tradiverse's Clause 20 application.  (Mar. 2020 Award at 9.)

2.   *The Arbitration*

The NAEGA No. 2 form contract calls for arbitration in New York "in accordance with the International Arbitration Rules of the American Arbitration Association."  (Dehart Mar. 2020 Award Decl. at Ex. L2, Cl. 30; Luzar Mar. 2020 Award Opp'n at 3.)

On August 10, 2018, Luzar filed an emergency arbitration before the International Centre for Dispute Resolution to seek recourse against Tradiverse for the loading delays.  (Luzar Mar. 2020 Award Opp'n at 5-6.)  The ICDR appointed Lucienne Bulow to act as the Emergency Arbitrator.  (Mar. 2020 Award at 8; Luzar Mar. 2020 Award Opp'n at 5.)  After a telephone hearing on August 29, 2018, Bulow ordered Tradiverse to post a bond of $650,000.  (Mar. 2020 Award at 8.)  Tradiverse refused to comply with the interim award and, instead, filed a petition in the Southern District of New York to vacate the ruling.  (Mar. 2020 Award at 8; *see Tradiverse Corp. v. Luzar Trading, S.A.*, 18-CV- 8194 (S.D.N.Y. 2018) (Berman, J.))  On March 1, 2019, the award was reaffirmed.  (Mar. 2020 Award at 10.)  On June 11, 2019, Judge Berman denied Tradiverse's petition to vacate the award and granted Luzar's cross-motion to confirm the award. *Tradiverse Corp. v. Luzar Trading, S.A.*, 18-CV-8194, 2019 WL 2433605, at *2 (S.D.N.Y. June 11, 2019).  Tradiverse refused to comply and appealed the court's decision, but the appeal became moot following the arbitration's completion.  (Luzar Mar. 2020 Award Opp'n at 6, 6 n.3.)

After Bulow issued the interim award, the parties appointed a full panel of arbitrators: Luzar appointed Maria Reinitz, Tradiverse appointed Samuel Bonilla, and the party arbitrators selected Amer Badawi as Chair (collectively, the "March 2020 Panel").  (Luzar Mar. 2020 Award Opp'n at 6.)  The March 2020 Panel conducted hearings from October 7-9, 2019 in New York with both parties' counsel and witnesses in attendance.  (Mar. 2020 Award at 10.)  It issued a unanimous ruling on March 23, 2020 finding for Luzar on some claims and for Tradiverse on other claims.

First, the March 2020 Panel found that Luzar's contacts with NAEGA were not in violation of NAEGA's rules, nor a tortious interference in Tradiverse's Clause 20 application; it "determined that there were no restrictions in the contracts preventing Luzar's communication with NAEGA, Inc. staff."  (Mar. 2020 Award at 14.)  The March 2020 Panel noted that Gary Martin, NAEGA's President and CEO, testified that none of the communications that Luzar sent to NAEGA were provided to the Clause 20 Panel, which reviewed only information provided by Tradiverse.  (Mar. 2020 Award at 14.)

Second, the March 2020 Panel found that a $100,000 settlement payment that Luzar made to Clause 20 panelist Michael Kaye's employer Archer Daniels Midland Company ("ADM") was irrelevant to the Clause 20 Panel's decision to deny Tradiverse's Clause 20 application.  (Mar. 2020 Award at 15.)  Even though Luzar made the payment around the time that Tradiverse was notified about the Clause 20 Panel's decision to deny Tradiverse's Clause 20 application, the payment was irrelevant because it was made to settle matters that were over a year old, and Tradiverse presented no evidence to establish that Luzar committed any wrongdoing.  (Mar. 2020 Award at 15.)

Third, the March 2020 Panel found that Tradiverse satisfied Clause 20's requirements, *see supra*, for a defense of performance impossibility.  (Mar. 2020 Award at 18.)  The Clause 20 Panel initially denied Tradiverse's application because it found that the inability to load the commodities was a result of a fire, which was "a cause within the control of the facility operator" and not the Lake Charles Fire Chief.  (Mar. 2020 Award at 15.)  The March 2020 Panel disagreed.  It found that, consistent with NAEGA precedent and New York law's consideration of performance impossibility (when the destruction of the means of performance makes performance objectively impossible), "[t]he fire and explosion produced the same impossibility to operate as would a hurricane, severe winter storm, or chemical fire at a nearby facility."  (Mar. 2020 Award at 18.)  The fire and explosion thus satisfied Clause 20, because the event caused "interruptions in or stoppages of the normal course of labor," and there were documented "[a]ction[s] by Federal, State or local government or authority," which shut down the power for "safety reasons."  (Mar. 2020 Award at 18.)

Satisfying Clause 20's requirements provided Tradiverse with relief only during the interruption period: from the explosion's commencement (June 28, 2018 at 11:00 hours) to its end (July 23, 2018 at 20:12 hours).  (Mar. 2020 Award at 19.)  The March 2020 Panel found that thereafter, Tradiverse was liable for demurrage[3] (from July 23, 2018 at 20:12 hours, to the completion of loading on approximately August 23, 2018).  (Mar. 2020 Award at 8, 18-21, Attach. 1; *see* Luzar Mar. 2020 Award Opp'n at 4, 8-9.)  Based on the contractual demurrage

---

[3] According to Black's Law Dictionary, "demurrage" means "[l]iquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by the agreed time" or "[a] charge due for the late return of ocean containers or other equipment."  Black's Law Dictionary (11th ed. 2019); *see Crescent Oil & Shipping Servs., Ltd. v. Phibro Energy, Inc.*, 929 F.2d 49, 53 n.12 (2d Cir. 1991) ("The owner or charterer of a vessel often charges a demurrage fee for the amount of time, beyond that agreed upon, that the vessel is delayed in discharging or lightering its cargo."); *Ocean Transp. Line, Inc. v. Am. Philippine Fiber Indus., Inc.*, 743 F.2d 85, 92 (2d Cir. 1984) (citation omitted) ("Under well-established principles of admiralty law, demurrage is 'extended freight.'").

rate of $15,000 per day, the total demurrage due to Luzar was $365,040.29.  (*See* Mar. 2020 Award at 19, Attach. 1; Luzar Mar. 2020 Award Opp'n at 9.)

Next, the March 2020 Panel denied Luzar's claim for purchasing a substitute cargo, for penalties derived from the Grain and Free Trade Association, and for hull cleaning.  (Mar. 2020 Award at 21.)  The March 2020 Panel awarded Luzar $37,820.39 in dead freight[4] charges for its claim that Tradiverse loaded only 1,702.363 mt of yellow soybean, which was 2,097.637 mt short of the contracted quantity (3,800 mt).  (Mar. 2020 Award at 21-22.)  The Panel also awarded Luzar $9,580 for Tradiverse's refusal to permit Luzar's stevedore access to the Vessel holds to install a separation.  (Mar. 2020 Award at 22.)

Finally, the March 2020 Panel ordered Tradiverse to pay 100% of its own attorney's fees and costs, 80% of Luzar's attorney's fees and costs ($229,189.64), and 80% of all arbitration fees ($114,190.71).  (Mar. 2020 Award at 23-24.)  The Panel reasoned:

> Throughout the course of this arbitration, Tradiverse has sought to suspend or delay this arbitration, commenced court actions to avoid compliance with both court and arbitral rulings, and has generally presented themselves as unwilling participants. The Panel views this as having unnecessarily extended the scope of the dispute and related costs.

(Mar. 2020 Award at 24.)

The March 23, 2020 Award ordered Tradiverse to pay Luzar a total of $755,821.03 plus interest.  (*See* Mar. 2020 Award at 24.)

## II.    The December 2019 Arbitration Award (ICDR Case No. 01-18-003-6326)

On April 17, 2018, Luzar entered into Broker's Contract No. 121385 to purchase 20,000 mt of soymeal from Tradiverse.  (Dec. 2019 Award ¶¶ 1, 34, No. 20-CV-623, ECF No. 6 at Ex.

---

[4] According to Black's Law Dictionary, "dead freight" means "[t]he amount paid by a shipper to a shipowner for the ship's unused cargo space."  Black's Law Dictionary (11th ed. 2019); *Tradhol Int'l, S.A. v. Colony Sugar Mills Ltd.*, 2009 WL 2381296, at *1 n.1 (S.D.N.Y. Aug. 4, 2009) (Holwell, J.).

2.)  Like the three Contracts implicated in the March 2020 Award, Contract No. 121385 is also governed by NAEGA No. 2 and New York law.  (Dec. 2019 Award ¶ 2.)

      1.   *Breach of Contract No. 121385*

      In August 2018 (around the time that the March 2020 Arbitration commenced), Luzar tried negotiating a cancellation of Contract No. 121385.  (Dec. 2019 Award ¶ 35.)  However, Tradiverse rejected Luzar's proposals, and Luzar went forward with Contract No. 121385.  (Dec. 2019 Award ¶ 35.)

      The "Payment Terms" provision in Contract No. 121385 states that Luzar must pay "[t]en percent (10%) cash before September 1, 2018. Balance cash against mates receipts. If the 10% cash not received before pre-advice, then seller can refuse to accept pre-advice and cancel contract."  (Dec. 2019 Award ¶ 34(d).)

      On Thursday, August 30, 2018, Tradiverse sent Luzar an invoice for the 10% deposit, in the amount of $700,530.  (Dec. 2019 Award ¶ 36.)  On Friday, August 31 at 5:15 PM, Luzar instructed its bank to wire the $700,530 payment to Tradiverse.  (Dec. 2019 Award ¶ 37.)  Approximately two hours later, at 7:25 PM, and again on September 1, Tradiverse emailed Luzar and declared Luzar in "default."  (Dec. 2019 Award ¶ 37.)  The payment reached Tradiverse's bank account on Tuesday, September 4, 2018.  (Dec. 2019 Award ¶ 38.)  After receiving the September 4 payment, Tradiverse declared Luzar in default for the third time.  (Dec. 2019 Award ¶ 38.)

      Gustavo Vollmer, Luzar's CEO, stated that Tradiverse's claims of default gave the company concern that Tradiverse would fail to perform Contract No. 121385.  (Dec. 2019 Award ¶ 38.)  On September 6, Luzar emailed Tradiverse stating that "Luzar intends to nominate a vessel ASAP and proceed with the execution of the contract. Please confirm that Tradiverse

also remains in a position to fully perform the contract." (Dec. 2019 Award ¶ 39.) On September 7, Tradiverse responded and reiterated its declarations of default. (Dec. 2019 Award ¶ 39.) Luzar responded on the same day stating that it "remains ready and able to execute the contract if Tradiverse chooses not to return the 10% prepayment" and asking, again, for Tradiverse to provide "adequate assurance of performance" pursuant to N.Y. U.C.C. § 2-609 by September 10. (Dec. 2019 Award ¶ 39.) Tradiverse responded by stating that "*Luzar* must establish adequate assurance pursuant to N.Y. UCC 2-609." (Dec. 2019 Award ¶ 40 (emphasis added).) Luzar reiterated that it "remains ready and able to fully execute the contract" as long as Tradiverse provided the adequate assurances that it had requested. (Dec. 2019 Award ¶ 40.)

On September 10, Tradiverse responded by declaring that Luzar breached Contract No. 121385 by failing to nominate a vessel and, consequently, forfeited its $700,530 deposit. (Dec. 2019 Award ¶ 41.)

### 2. *The Arbitration*

On October 1, 2018, Tradiverse commenced arbitration in New York, alleging that Luzar breached Contract No. 121385 and committed fraud. (Dec. 2019 Award ¶ 8.) Luzar filed a counterclaim arguing that Tradiverse repudiated the contract and engaged in unlawful self-help. (Dec. 2019 Award ¶ 9.)

Thereafter, the parties appointed a panel of three arbitrators: Luzar nominated Kathleen James, Tradiverse nominated Andrew Marting, and the party arbitrators selected Mark Cymrot as Chair (collectively, the "December 2019 Panel."). (Luzar Dec. 2019 Award Opp'n at 5-6, No. 20-CV-623, ECF No. 28; Dec. 2019 Award ¶ 3.) Neither Luzar nor Tradiverse filed an objection to the December 2019 Panel's appointments. (Dec. 2019 Award ¶ 12.)

On June 17, 2019, after hearing argument, the December 2019 Panel entered an interim award ordering Tradiverse to deposit the $700,530 that it received in escrow with the ICDR. (Dec. 2019 Award ¶¶ 16, 18.)  Tradiverse asked the Panel to reconsider the interim award; the December 2019 Panel considered the parties' arguments, but denied the request.  (Dec. 2019 Award ¶ 19.)  Still, Tradiverse refused to comply with the interim award.  (Dec. 2019 Award ¶ 20.)

On December 20, 2019, the December 2019 Panel issued a unanimous ruling in favor of Luzar.

First, it held that although the September 4, 2018 payment was three calendar days (one business day) late and may have been a non-material breach of Contract No. 121385, Tradiverse presented no evidence to show that the breach was prejudicial.  (*See* Dec. 2019 Award ¶¶ 55-56.)

Second, it found that Tradiverse's numerous, unfounded default declarations provided "an objective factual basis for [Luzar's] insecurity" under N.Y. U.C.C. § 2-609(1), which allowed Luzar to seek adequate assurances before incurring the costs of nominating a vessel. (Dec. 2019 Award ¶¶ 58-59.)  Thus, Tradiverse's failure to answer Luzar's requests for assurance constituted repudiation under N.Y. U.C.C. § 2-609(4).  (Dec. 2019 Award ¶ 64.)

Next, the December 2019 Panel found that Tradiverse had no contractual basis for declaring that Luzar forfeited its $700,530 deposit and decided that Tradiverse must return the deposit to Luzar.  (Dec. 2019 Award ¶¶ 66-73.)  The Panel rejected Tradiverse's claim that Luzar's August 31, 2018 bank advice was fraudulent.  (Dec. 2019 Award ¶ 57.)  The Panel also denied Luzar's counterclaim for lost profits and punitive damages.  (Dec. 2019 Award ¶ 75.)

Finally, the December 2019 Panel ordered Tradiverse to pay all arbitration costs and reasonable legal fees ($140,739.68), and also the ICDR's administrative fees and arbitrators' compensation ($62,222.44).  The Panel reasoned:

> Luzar is the prevailing party, which, in an international arbitration, generally entitles it to recovery of its costs and fees, and in addition, Tradiverse breached the Case Management Order by producing documents three months late and refused to agree to Luzar's reasonable requests to shorten and streamline the arbitration, which complicated the arbitration and added to its expense, and Tradiverse is in contempt of the Interim Award entered by the Tribunal on June 17, [2019]. *See* ICDR Rule, Article 24(4).

(Dec. 2019 Award ¶ 78.)

The December 20, 2019 Award ordered Tradiverse to pay Luzar a total of $900,492.12 plus interest.  (*See* Dec. 2019 Award at 14-15.)

## LEGAL STANDARD

Arbitration awards are not self-enforcing and "must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006).

The New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, 9 U.S.C. §§ 201-208, enforces arbitration agreements involving at least one foreign party.  *Farrell v. Subway Int'l, B.V.*, 2011 WL 1085017, at *1 (S.D.N.Y. Mar. 23, 2011) (Keenan, J.); *see Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997).  Chapter 2 of the Federal Arbitration Act ("FAA") codifies the Convention and governs arbitration agreements that arise from a "legal relationship, whether contractual or not, which is considered as commercial."  9

U.S.C. § 202.[5]  For arbitrations taking place within the United States, the Convention enables a

court in the country under whose law the arbitration was conducted to apply domestic arbitral

law (in this case the FAA) to a motion to vacate that arbitral award.  *See Yusuf Ahmed Alghanim*

*& Sons*, 126 F.3d at 21.

"It is well established that courts must grant an arbitration panel's decision great

deference."  *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir.

2003).  Typically, confirmation of an arbitration award is "a summary proceeding that merely

makes what is already a final arbitration award a judgment of the court."  *D.H. Blair & Co.*, 462

F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984) and 9 U.S.C.

§ 9).  District courts are required to treat a petition to vacate an arbitral award as akin to a motion

for summary judgment; the party moving to vacate the award has the burden of proof.  *Salzman*

*v. KCD Fin., Inc.*, 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (Cote, J.).  The Second

Circuit has confirmed that only "a barely colorable justification for the outcome reached" by the

arbitrator is necessary to confirm the award.  *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Landy*

*Michaels Realty Corp. v. Local 32B-32J, Serv. Employees Int'l Union, AFL-CIO*, 954 F.2d 794,

797 (2d Cir. 1992)).  Thus, a party petitioning to vacate an arbitration award has a "very high"

burden of proof to avoid confirmation.  *D.H. Blair & Co.*, 462 F.3d at 110.  "[O]nly a very

narrow set of circumstances delineated by statute and case law permit vacatur."  *Porzig v.*

*Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007) (citation and

internal quotation marks omitted).

---

[5] Chapter 2 of the FAA does not govern a legal relationship that is "entirely between citizens of the United States" and is otherwise domestic in nature.  9 U.S.C. § 202; *see Ferrand v. Mystique Brands LLC*, 2021 WL 119572, at *5 (S.D.N.Y. Jan. 13, 2021) (Engelmayer, J.).

Pursuant to the FAA, a court may vacate an arbitration award in four limited

circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of
> them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the
> hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent
> and material to the controversy; or of any other misbehavior by which the rights
> of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them
> that a mutual, final, and definite award upon the subject matter submitted was not
> made.

9 U.S.C. § 10(a).  In addition, the Second Circuit has recognized that a court may vacate an

arbitration award that was rendered in "manifest disregard of the law" or the terms of the

relevant agreements.  *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451-52 (2d Cir. 2011)

(citation omitted).

Tradiverse cites all of the above grounds as reasons for vacatur.  (Tradiverse Dec. 2019

Award Mem. at 4, No. 20-CV-623, ECF No. 20; Tradiverse Mar. 2020 Award Mem. at 5, No.

20-CV-3387, ECF No. 3.)  The Court turns to each ground, as applied to the applicable awards,

below.

## DISCUSSION

Tradiverse's petitions to vacate boil down to its contentions that (1) the March 2020

Panel was biased and had no contractual basis to award Luzar demurrage of above $20,000 or

attorney's fees and costs; and (2) the December 2019 Panel inappropriately allowed Luzar to

introduce settlement communications between the parties.  (Tradiverse Dec. 2019 Award Mem.

at 4; Tradiverse Mar. 2020 Award Mem. at 5.)  The Court is not persuaded by these arguments or by any of Tradiverse's other ancillary arguments.[6]

## I.    § 10(a)(1): Corruption, Fraud, or Undue Means

The Court is not persuaded by Tradiverse's argument that Luzar committed fraud by making a $100,000 settlement payment to ADM.

Section 10(a)(1) of the FAA is strictly construed.  An arbitration award "must stand unless it is made *abundantly clear* that it was obtained through corruption, fraud, or undue means."  *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Port Parties, Ltd.*, 2017 WL 3267743, at *12 (S.D.N.Y. July 31, 2017) (Failla, J.) (emphasis in original) (citation omitted).  Although the Second Circuit has not yet articulated a test for vacating an award under section 10(a)(1) of the FAA, courts in this district have found that the party petitioning to vacate the award must show that "(1) her adversary engaged in fraudulent activity; (2) the petitioner could not, in the exercise of due diligence, have discovered the alleged fraud prior to the award; and (3) the alleged fraud materially related to an issue in the arbitration." *McCarthy v. Smith Barney Inc.*, 58 F. Supp. 2d 288, 293 (S.D.N.Y. 1999) (Sprizzo, J.); *Salzman*, 2011 WL 6778499, at *3.

Tradiverse argues that "Luzar engaged in fraudulent and improper behavior by virtue of making a payment in excess of $100,000 [] to NAEGA committee member Michael Kaye in an apparently successful attempt to sway the NAEGA committee to deny Tradiverse's Clause 20

---

[6] The Court notes that many of Tradiverse's arguments are a hodgepodge of conclusory factual allegations rather than analysis, and that they are largely devoid of any citation to the record or to specific, applicable case law.  (*See, e.g.*, Tradiverse Dec. 2019 Award Mem. at 1-2; Tradiverse Mar. 2020 Award Mem. at 1-2; Tradiverse Dec. 2019 Award Reply at 4, No. 20-CV-623, ECF No. 31; Tradiverse Mar. 2020 Award Reply at 9, No. 20-CV-3387, ECF No. 26.)  Any arguments raised by the parties but not specifically addressed below have been considered by the Court on the merits and rejected.

14

application. This issue was raised and was even affirmed as evoking suspicion in the March 2020 Award." (Tradiverse Mar. 2020 Award Mem. at 18.)  Tradiverse has provided no evidence as to why the $100,000 payment is fraudulent or improper.  As the March 2020 Panel found and as Tradiverse admits, Luzar made the payment to Kaye's employer, ADM, "for unpaid accounts that had aged more than 16 months." (Tradiverse Dec. 2019 Award Mem. at 2; Mar. 2020 Award at 15; *see also Certain Underwriting Members of Lloyds of London v. Fla., Dep't of Fin. Servs.*, 892 F.3d 501, 507 (2d Cir. 2018) (citation omitted) ("[T]he balance of case law in the Second Circuit supports the proposition that when a purported financial interest or financial relationship between an arbitrator and a party to arbitration is indirect, general[,] or tangential, courts should not vacate arbitration awards.").)  Tradiverse also fails to articulate how the payment, which was *not* made to a member of the March 2020 Panel (Kaye was a member of the Clause 20 Panel), is materially related to the issues before the March 2020 Panel.  The $100,000 settlement payment that Luzar made to a Clause 20 panelist's employer in an unrelated matter does not support Tradiverse's claim that Luzar committed fraud in the March 2020 Arbitration.

## II.  § 10(a)(2): Evident Partiality or Corruption in the Arbitrators

The Court is not persuaded by Tradiverse's argument that certain arbitrators demonstrated evident partiality or corruption by awarding Luzar attorney's fees and demurrage, and also by attending a NAEGA-commissioned Japan trip.  Tradiverse's evident partiality and corruption claims concerning Gary Martin and NAEGA are likewise not persuasive.

Evident partiality or corruption under section 10(a)(2) may be found "where a reasonable person would *have* to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984) (emphasis in original) (internal quotation marks

omitted); *Schuyler Line Navigation Co., LLC v. KPI Bridge Oil, Inc.*, 2020 WL 5237800, at *3 (S.D.N.Y. Sept. 2, 2020) (Kaplan, J.).  This standard may be met if, for example, "an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties."  *Buhannic v. Tradingscreen, Inc.*, 2018 WL 3611985, at *4 (S.D.N.Y. July 27, 2018) (Ramos, J.), *aff'd,* 779 F. App'x 52 (2d Cir. 2019) (collecting cases).  Objections "based simply on speculation" will not meet the evident partiality standard.  *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (citation omitted).

Tradiverse makes several arguments for why the Court should vacate the Awards under section 10(a)(2).

First, Tradiverse argues that the March 2020 Panel demonstrated evident partiality in awarding Luzar demurrage of $365,040.29 and attorney's fees and costs of $343,380.35. (Tradiverse Mar. 2020 Award Mem. at 19-20.)  According to Tradiverse, in approving these awards, the arbitrators "abandoned all pretense of neutrality" and offered "no meaningful explanation as to the rationale of awarding attorney's fees and costs."  (Tradiverse Mar. 2020 Award Mem. at 19-20 (alterations omitted).)  Although an "arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'"  *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted).  Here, the March 2020 Panel explained its rationale for awarding demurrage and attorney's fees and costs.

The March 2020 Panel awarded demurrage because, even though it found that the terminal explosion met Clause 20's requirements, Tradiverse was obligated to pay demurrage based on the contractual rate of $15,000 per day for the duration after the work resumed on July

23, 2018 at 20:12 hours.  (Mar. 2020 Award at 17-21, Attach. 1; Tradiverse Mar. 2020 Award

Opp'n at 18, 18 n.7; Dehart Mar. 2020 Award Decl. at Ex. 1, p. 1.)

The March 2020 Panel awarded Luzar attorney's fees and costs because Tradiverse

repeatedly "sought to suspend or delay this arbitration, commenced court actions to avoid

compliance with both court and arbitral rulings, and has generally presented themselves as

unwilling participants."  (Mar. 2020 Award at 23; *see also* Dec. 2019 Award at 14 (awarding

Luzar reasonable legal fees and costs because "Tradiverse breached the Case Management Order

by producing documents three months late and refused to agree to Luzar's reasonable requests to

shorten and streamline the arbitration, which complicated the arbitration and added to its

expense, and Tradiverse is in contempt of the Interim Award.").)  Tradiverse has presented no

evidence that would lead a reasonable person to conclude that the March 2020 Panel was partial

to Luzar.

Second, Tradiverse argues that a NAEGA-commissioned Japan trip taken by Gary Martin

(NAEGA President), Sam Bonilla (March 2020 panelist selected by Tradiverse), and Andrew

Marting (December 2019 panelist selected by Tradiverse) during the course of the two

arbitrations demonstrates fraud and bias.  (Tradiverse Mar. 2020 Award Mem. at 3, 11, 18-19;

Tradiverse Mar. 2020 Award Reply at 8; Tradiverse Dec. 2019 Award Mem. at 2-3, 11;

Tradiverse Dec. 2019 Award Reply at 5, 9-10.)  As an initial matter, Tradiverse does not explain

*who* was biased or *how* the trip demonstrates bias—Tradiverse merely points to the fact that the

trip occurred.  The trip was taken to a seminar on "Commercial and Official Best Practices in the

U.S.-Japan Grain Trade" led by Martin and "NAEGA Senior Advisors Sam Bonilla and Andrew

Marting."  (No. 20-CV-623, ECF No. 20 at Ex. 7; Luzar Dec. 2019 Award Opp'n at 16 n.10;

Luzar Mar. 2020 Award Opp'n at 19 n.8.)  Without more, no reasonable person could conclude

that Bonilla or Marting, both of whom were selected by Tradiverse, were partial to Luzar during the two arbitrations.  *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) ("A showing of evident partiality must be direct and not speculative.").

Third, Tradiverse argues that "members of the Arbitral Panel had a 'personal interest, pecuniary or otherwise' in the outcome of the case" and that NAEGA "actively coordinated with a number of parties, including Luzar, to ensure that Tradiverse would not be provided fair arbitral hearings."  (Tradiverse Mar. 2020 Award Mem. at 20; Tradiverse Dec. 2019 Award Mem. at 14-15.)  Tradiverse relies primarily upon two examples of this purported, active coordination.

The first example that Tradiverse provides is that Gary Martin, the CEO of NAEGA testified on behalf of Luzar at the March 2020 Arbitration.[7]  (Tradiverse Mar. 2020 Award Mem. at 2, 10; Tradiverse Dec. 2019 Award Mem. at 2, 10, 15.)  Tradiverse asserts that "[t]hrough the course of his conduct and testimony, Mr. Martin abdicated any specter of impartiality on the part of NAEGA and in so doing, called into question . . . the susceptibility to bias for any arbitrator empaneled from NAEGA's approved lists."  (Tradiverse Mar. 2020 Award Mem. at 10.)  Tradiverse essentially argues that, because Martin testified as the CEO of NAEGA, and the March 2020 Panel was empaneled by NAEGA, the entire Panel was therefore partial to Luzar.  Tradiverse fails to identify any testimony by Martin demonstrating that he or the March 2020 Panel was partial to Luzar.  The lack of specific testimony renders Tradiverse's argument wholly

---

[7] The Court notes that Tradiverse did not disclose that it requested Martin to testify as a witness in the first place. (Luzar Mar. 2020 Award Opp'n at 19-20.)

speculative.  Thus, no reasonable person could conclude that the March 2020 Panel was partial to Luzar.  *See Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104.

The second example Tradiverse provides is that "NAEGA refused to produce correspondence pertaining to the Tradiverse Clause 20 application between Gary Martin and counsel for Luzar citing to a Joint Defense Agreement."  (Tradiverse Mar. 2020 Award Mem. at 2, 7-8, 10, 20; Tradiverse Dec. 2019 Award Mem. at 2, 7, 11, 15.)  Tradiverse appears to argue that (1) NAEGA and Luzar's joint defense agreement renders NAEGA partial to Luzar, and (2) the December 2019 and March 2020 Panels were also partial to Luzar because the Panels were empaneled by NAEGA.  Although Tradiverse's briefs are scattered with references to the joint defense agreement, Tradiverse fails to disclose the context surrounding the agreement.  The record suggests that the joint defense agreement was prompted by Tradiverse's lawsuit against NAEGA and Luzar in Florida state court (*Tradiverse Corporation v. Luzar Trading S.A. et al*, No. 2019-005767-CA-01 (Fla. 11th Cir. Ct. 2019)) challenging the Clause 20 ruling.  (*See* NAEGA's Fla. Case Privilege Log at 1, No. 20-CV-3387, ECF No. 4 at Ex. 5; Magistrate Judge Gorenstein's June 23, 2020 Order at 1, 3 n.3, No. 20-CV-3387, ECF No. 25; Luzar Mar. 2020 Award Reply at 6-7, No. 20-CV-3387, ECF No. 27.)  Thus, there is no basis to conclude that the joint defense agreement rendered NAEGA, the December 2019 Panel, or the March 2020 Panel partial to Luzar.

## III.   Misconduct by the Arbitrators (§ 10(a)(3)), and the Arbitrators Exceeding Their Powers (§ 10(a)(4))

The Court is not persuaded by Tradiverse's argument that the arbitrators engaged in misconduct and exceed their powers by allowing Luzar to introduce settlement communications, awarding Luzar separation charges of $9,580, and awarding Luzar attorney's fees and costs.

19

Vacatur is warranted under section 10(a)(3) if the arbitrators were guilty of misconduct that prejudiced the rights of a party.  The Second Circuit has instructed that "except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review" pursuant to section 10(a)(3).  *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) ("Federal courts do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair.").  For evidentiary determinations, arbitrators "need not follow all the niceties observed by the federal courts," such as the Federal Rules of Civil Procedure or the Federal Rules of Evidence.  *Buhannic*, 2018 WL 3611985, at *6 (citing *Tempo Shain Corp.*, 120 F.3d at 20); *see also Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 545 (2d Cir. 2016) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 (1987)) ("It is well settled that procedural questions that arise during arbitration, such as which witnesses to hear and which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts.").  Rather, arbitrators "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain Corp.*, 120 F.3d at 20.

Courts have consistently given section 10(a)(4) "the narrowest of readings." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011).  An arbitrator exceeds his authority only by (1) "considering issues beyond those the parties have submitted for [his] consideration," or (2) "reaching issues clearly prohibited by law or by the terms of the parties' agreement." *Id.* A court's inquiry "thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d

Cir. 2002); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 564 (2013) ("Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits.").

Tradiverse makes several arguments for why the Court should vacate the Awards under section 10(a)(3) for the arbitrators engaging in misconduct and under section 10(a)(4) for the arbitrators exceeding their powers.

Tradiverse begins by arguing that the December 2019 Panel engaged in misconduct and exceeded its powers by (1) allowing Luzar to introduce privileged settlement communications and (2) rendering a decision that was based on these communications.[8]  (Tradiverse Dec. 2019 Award Mem. at 16-19; Tradiverse Mar. 2020 Award Mem. at 22-23.)  Tradiverse relies heavily on Rule 408 of the Federal Rules of Evidence, which limits the admissibility of compromise offers and negotiations.  (Tradiverse Dec. 2019 Award Mem. at 16.)  Yet, Tradiverse concedes that "arbitration is an alternative to litigation where the Federal Rules of Evidence and Civil Procedure do not always strictly apply."  (Tradiverse Dec. 2019 Award Mem. at 17; *see Ouziel v. Shearson Lehman Bros. Inc.*, 1988 WL 36933, at *2 (E.D.N.Y. Apr. 13, 1988) (holding that plaintiff's disclosure of settlement communications, "which would be inadmissible in a court of law under Fed. R. Evid. 408 or its state counterpart, is not barred in an arbitration proceeding where the rules of evidence do not apply").)  Because arbitrators have "substantial discretion to admit or exclude evidence," fundamental fairness was not violated.  *See LJL 33rd St. Assocs.,*

---

[8] As the December 2019 Panel notes, the "settlement communications" that Tradiverse refers to are emails that were formally marked as "for settlement purposes," but "largely contain an exchange of accusations, and the one substantive offer is irrelevant."  (Dec. 2019 Award at 7 n.4.)

*LLC v. Pitcairn Properties Inc.*, 725 F.3d 184, 195 (2d Cir. 2013); *Nat'l Football League Mgmt. Council*, 820 F.3d at 545.

Tradiverse backpedals to argue, relatedly, that it was "deprived of a fundamentally fair hearing by absorbing the one-two punch of (a) Luzar's failure to provide any notice or an opportunity to object to its introduction of confidential settlement communications; and (b) the arbitral panel's refusal to consider or address the merits of Tradiverse's request for sanctions to ameliorate the due-process violation by excluding the settlement communications from its consideration." (Tradiverse Dec. 2019 Award Mem. at 18.) Neither argument warrants vacatur. For one, Tradiverse cites no support for the proposition that, in an arbitration, a party introducing evidence must have provided its adversary notice or an opportunity to object to the evidence. The Court is unaware of such a requirement. Moreover, as Luzar points out, Tradiverse immediately lodged objections to the use of the settlement communications by moving to strike the December 2019 and opposing Luzar's request for an interim award. (Dehart Dec. 2019 Award Decl. at Exs. L2, L5, No. 20-CV-623, ECF No. 29; Luzar Dec. 2019 Award Opp'n at 20.) In both the interim award and the final award, the Panel explicitly stated that it considered (and rejected) Tradiverse's argument that Luzar's use of the settlement communications was inappropriate, and also its argument that Luzar "should be sanctioned." (Dehart Dec. 2019 Award Decl. at Ex. L6, p. 5 n.1; Dec. 2019 Award at 7 n.4; Luzar Dec. 2019 Award Opp'n at 21.) That the December 2019 Panel decided against Tradiverse does not mean fundamental fairness was violated. *See Buhannic*, 2018 WL 3611985, at *6 (citation omitted) (noting that an arbitration award may be vacated only if a party's right to be heard was "grossly and totally blocked").

Tradiverse proceeds to argue that the March 2020 Panel exceeded its authority in awarding separation charges and that "the March 2020 Award fails to adequately explain how or why separation charges of $9,580 by and between an entity that is not a party to the arbitration is attributable to Tradiverse." (Tradiverse Mar. 2020 Award Mem. at 22.) As noted *supra*, the March 2020 Panel awarded Luzar $9,580 for Tradiverse's refusal to permit Luzar's stevedore access to the Vessel holds to install a separation. (Mar. 2020 Award at 22.) Focusing on whether the arbitral panel had the power to reach the issue (rather than whether the arbitral panel decided the issue correctly), the Court is satisfied that the March 2020 Panel has the authority to award separation charges. First, the March 2020 Panel has the authority to consider the issue because NAEGA No. 2's Clause 30 provides that the parties "expressly agree that any controversy or claim arising out of, in connection with or relating to this contract . . . shall be settled by arbitration." (Dehart Mar. 2020 Award Decl. at Ex. L2, Cl. 30.) Tradiverse does not dispute that the separation charges arose out of the Contracts. Second, ICDR Article 34(d) allows arbitral panels to allocate "reasonable legal and *other costs* incurred by the parties." ICDR Article 34(d) (emphasis added). Thus, the March 2020 Panel did not exceed its authority in awarding separation charges.

Next, Tradiverse argues that the March 2020 Panel exceeded its authority by refusing to follow the "American Rule" (that the parties bear their own attorney's fees) and deciding to award Luzar attorney's fees and costs. (Tradiverse Mar. 2020 Award Mem. at 16-17.) Focusing on whether the arbitral panel had the power to reach the issue (rather than whether the arbitral panel decided the issue correctly), the Court is satisfied that the March 2020 Panel has the authority to award attorney's fees and costs. *See Westerbeke Corp.*, 304 F.3d at 220. Pursuant to ICDR Article 34, arbitral tribunals have discretion to allocate, among other things, "reasonable

legal and other costs incurred by the parties." *See* ICDR Article 34(d); *Laura v. Pristec AG*, 2020 WL 4287709, at *3 (S.D.N.Y. July 27, 2020) (Abrams, J.). Thus, the March 2020 Panel did not exceed its authority in awarding attorney's fees and costs.

Remarkably, Tradiverse goes as far as to argue that "the [March 2020] [P]anel's misguided analysis as to its arrival at an award of over $750,000 in favor of Luzar is unsupportable and may only be arrived at by ignoring the arbitral dispute in an apparent effort to arrive at a pre-ordained result." (Tradiverse Mar. 2020 Award Mem. at 22.) As detailed *supra*, Tradiverse has offered no evidence that allows the Court to conclude that the March 2020 Arbitration was rigged against it or that any fraud or bias occurred.

## IV.   Manifest Disregard of the Law

The Court is not persuaded by Tradiverse's argument that the arbitrators manifestly disregarded the law by awarding Luzar demurrage.

To demonstrate that the arbitral tribunal manifestly disregarded the law or the terms of the relevant agreements, the moving party bears a "heavy burden" of showing that (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators," (2) "the law was in fact improperly applied, leading to an erroneous outcome," and (3) "the arbitrator . . . kn[ew] of its existence, and its applicability to the problem before him." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388-90 (2d Cir. 2003). "[V]acatur for manifest disregard of a commercial contract is appropriate only if the arbitral award contradicts an express and unambiguous term of the contract or if the award so far departs from the terms of the agreement that it is not even arguably derived from the contract." *Westerbeke Corp.*, 304 F.3d at 222. The Second Circuit has held that manifest disregard of the law is a "doctrine of last resort" and that its use should be "limited only to those exceedingly rare

24

instances where some egregious impropriety on the part of the arbitrators is apparent." *Duferco Int'l Steel Trading*, 333 F.3d at 389; *EB Safe, LLC v. Hurley*, 832 F. App'x 705, 707 (2d Cir. 2020) (same).

For its principal example of manifest disregard of the law, Tradiverse argues that the March 2020 Panel "manifestly disregarded the Contracts[] and the clear contractual demurrage limit of $20,000" by awarding Luzar demurrage of $365,040.29. (Tradiverse Mar. 2020 Award Reply at 2-3; Tradiverse Mar. 2020 Award Mem. at 18, 24.) Tradiverse argues that the parties agreed to a contractual limit of $20,000, because under the "demurrage" heading, the Contracts each state "Demurrage as per charter party. Despatch half demurrage. Demurrage not to exceed $20,000 total." (Dehart Mar. 2020 Award Decl. at Ex. L1, p. 1, 4, 8.) Tradiverse states that it "does not contest the [$15,000] daily rate of demurrage provided by the charter party, but [Luzar] cannot ignore the clear and binding language of the Contracts that provides 'Demurrage not to exceed $20,000 total.'" (Tradiverse Mar. 2020 Award Reply at 3.) Luzar disagrees with Tradiverse's interpretation of the Contracts and argues that demurrage is not limited to "a maximum fixed lump sum of $20,000." (Luzar Mar. 2020 Award Reply at 1-3.) The crux of the dispute is whether the $20,000 number in the Contracts—that "Demurrage not to exceed $20,000 total"—applies to limit the *total* demurrage amount (as Tradiverse contends) or to limit the *daily* demurrage amount (as the March 2020 Panel effectively decided and as Luzar appears to argue).

Tradiverse falls far short of satisfying its heavy burden.[9]  It relies on conclusory statements that merely repeat its unitary argument and parrot the three-prong test in *Duferco*:

- **Prong 1**: "[T]he law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators."
    - **Tradiverse**: "First, the arbitrators clearly ignored black-letter contract law in issuing an award that provided for demurrage over $365,000 when the Contracts expressly provide that $20,000 is the demurrage limit."
- **Prong 2**: "[T]he law was in fact improperly applied, leading to an erroneous outcome."
    - **Tradiverse**: "Second, the law governing the interpretation of contracts was improperly applied in that the arbitrators ignored the unambiguous language of the Contracts but rather looked outside of the four corners of the agreements, leading to the erroneous award of demurrage over $345,000 more than is permitted by the Contracts."
- **Prong 3**: "[T]he arbitrator . . . kn[ew] of its existence, and its applicability to the problem before him."
    - **Tradiverse**: "Finally, it is clear in reading the March 2020 Award that the arbitrators are aware of the primacy of the Contracts and the laws governing contract interpretation. However, the arbitrators, while subjectively aware of the law governing the interpretation of unambiguous language in contracts, ignored the law and awarded over $365,000 in demurrage to Luzar."

(*Compare Duferco Int'l Steel Trading*, 333 F.3d at 390, *with* Tradiverse Mar. 2020 Award Reply at 3-5.)

Substantively, these bare-bones statements cannot meet the heavy burden for vacatur for several reasons.  First, apart from the disputed demurrage clause, Tradiverse fails to identify any other parts of the Contracts or any relevant case law that instructs (let alone binds) the March 2020 Panel to apply the $20,000 number to limit the *total* demurrage amount.  *See Ferrand v. Mystique Brands LLC*, 2021 WL 119572, at *5 (S.D.N.Y. Jan. 13, 2021) (Engelmayer, J.); *see also Duferco Int'l Steel Trading*, 333 F.3d at 390 ("[W]here an arbitral award contains more than

---

[9] Because Tradiverse has not demonstrated that any grounds for vacatur exist, the Court need not address Luzar's argument regarding whether the June 23, 2020 discovery order issued by Magistrate Judge Gorenstein, to whom Judge Swain initially referred both civil actions for only General Pretrial matters, is law of the case.  (*See* Luzar Mar. 2020 Award Reply at 6-9; Order Referring Case to Magistrate Judge, No. 20-CV-3387, ECF No. 25; Order Referring Case to Magistrate Judge, No. 20-CV-3387, ECF No. 14; No. 20-CV-623, ECF No. 34.)

one plausible reading, manifest disregard cannot be found if at least one of the readings yields a legally correct justification for the outcome.").

Second, Tradiverse provides no evidence that the March 2020 Panel *knew* that the $20,000 number limits the total demurrage amount and "intentionally defied" clear contract terms. *See STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011); *Ferrand*, 2021 WL 119572, at *5.

Third, the fact that the March 2020 Panel did not explain its decision not to apply the $20,000 number to limit the total demurrage amount does not weigh in favor of vacatur, because "[e]ven where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case." *Duferco Int'l Steel Trading*, 333 F.3d at 390; *STMicroelectronics, N.V.*, 648 F.3d at 78 (same). Here, in the context of multi-million-dollar Contracts involving over 30,000 metric tons of soybean products (which took approximately a month to load), there is at least a "barely colorable justification" for the March 2020 Panel's determination that demurrage resulting from delays in loading is not limited to $20,000 (1.33333 days) total. *See EB Safe, LLC*, 832 F. App'x at 707-08 (holding that an arbitration award should be enforced "if there is a barely colorable justification for the outcome reached").

Thus, the March 2020 Panel did not manifestly disregard the law in awarding Luzar demurrage of $365,040.29.[10]

---

[10] In so holding, the Court is mindful of the Supreme Court's holding in *Oxford Health Plans LLC v. Sutter*:

> The potential for [an arbitrator's] mistakes is the price of agreeing to arbitration. As we have held before, we hold again: "It is the arbitrator's construction [of the contract] which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." [*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)].

569 U.S. 564, 572-73 (2013).

**CONCLUSION**

For the foregoing reasons, Luzar's petitions to confirm each arbitration award are

GRANTED.  (No. 20-CV-623, ECF No. 1; No. 20-CV-3387, ECF No. 22.)  Tradiverse's

corresponding petitions to vacate and its oral argument requests in connection with its petitions

are DENIED.  (No. 20-CV-623, ECF No. 19; No. 20-CV-3387, ECF No. 1.)  The Clerk of the

Court is respectfully directed to terminate the petitions above.

SO ORDERED.

DATED:       New York, New York
             March 25, 2021

_____ /s/ Kimba M. Wood _____
KIMBA M. WOOD
United States District Judge
